United States v. Marinello

# United States Court of Appeals
## FOR THE SECOND CIRCUIT

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 15th day of February, two thousand seventeen.

PRESENT:    ROBERT A. KATZMANN,
                         *Chief Judge*,
          DENNIS JACOBS,
          JOSÉ A. CABRANES,
          ROSEMARY S. POOLER,
          REENA RAGGI,
          PETER W. HALL,
          DEBRA ANN LIVINGSTON,
          DENNY CHIN,
          RAYMOND J. LOHIER, JR.,
          SUSAN L. CARNEY,
          CHRISTOPHER F. DRONEY,
                         *Circuit Judges*.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA,

                        *Appellee*,

            v.                                15-2224

CARLO J. MARINELLO, II,

                        *Appellant*.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

Joseph M. LaTona, Buffalo, NY, *for Defendant-Appellant*.

Russell T. Ippolito, Jr., Assistant United States Attorney, Buffalo, NY, *for* James P. Kennedy, Jr., Acting United States Attorney for the Western District of New York,[1] *Appellee*.

**ORDER**

Following disposition of this appeal, an active judge of the Court requested a poll on whether to rehear the case *en banc*. A poll having been conducted and there being no majority favoring *en banc* review, rehearing *en banc* is hereby **DENIED**.

Dennis Jacobs, *Circuit Judge*, joined by José A. Cabranes, *Circuit Judge*, dissents by opinion from the denial of rehearing *en banc*.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK

---

[1] Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Acting United States Attorney James P. Kennedy, Jr., is automatically substituted for former United States Attorney William J. Hochul, Jr.

**DENNIS JACOBS, <u>Circuit Judge</u>, joined by JOSÉ A. CABRANES, <u>Circuit</u>**

**<u>Judge</u>, dissenting from the denial of rehearing in banc:**

I respectfully dissent from the denial of rehearing in banc. The panel

weighed in on the wrong side of a circuit split, affirmed a criminal conviction

based on the most vague of residual clauses, and in so doing has cleared a

garden path for prosecutorial abuse.


**I**

Marinello was convicted at trial on nine counts. Eight of them (for willful

failure to file tax returns) raise no issue. The single problematic count is for

violating the "omnibus clause" of the criminal portion of the Internal Revenue

Code, which makes it a felony to "in any other way corruptly . . . obstruct[] or

impede[], or endeavor[] to obstruct or impede, the due administration of this

title." 26 U.S.C. § 7212(a). *Yes*: "this title" is the entire corpus of the Internal

Revenue Code--a slow read in 27 volumes of the United States Code Annotated.

The government charged that Marinello violated the omnibus clause in

eight different ways. And the district court instructed the jury that it was

enough for conviction that Marinello violated the statute in any single one of

1

those several ways--and that the jurors did not need to agree among themselves as to which.

Among the acts listed in the jury charge as violating the omnibus clause are:

- "failing to maintain corporate books and records for Express Courier [his small business]";

- "failing to provide [his] accountant with complete and accurate information related to [his] personal income and the income of Express Courier";

- "destroying, shredding and discarding business records of Express Courier";

- "cashing business checks received by Express Courier for services rendered"; and

- "paying employees of Express Courier with cash."

839 F.3d at 213 (internal brackets omitted). If this is the law, nobody is safe: the jury charge allowed individual jurors to convict on the grounds, variously, that Marinello did not keep adequate records; that, having kept them, he destroyed them; or that, having kept them and preserved them from destruction, he failed

2

to give them to his accountant.

After conviction on all counts, Marinello moved for a new trial on the ground, inter alia, that the omnibus clause applied only to knowing obstruction of an ongoing IRS investigation, not to every possible impediment to the administration of any of the uncountable provisions of the Internal Revenue Code; and that he therefore should have been acquitted because there was no evidence that he was aware of an IRS investigation.

The district court rejected the argument and the panel affirmed, holding: "under section 7212(a), 'the due administration of this title' is not limited to a pending IRS investigation or proceeding of which the defendant had knowledge." 839 F.3d at 223. Accordingly, the law in the Second Circuit today is that it is a felony to "corruptly" take (or try to take) any of the actions listed above--or to take or try to take any other action that impedes the "due administration" of the Internal Revenue Code.

The Sixth Circuit, alert to the sweep of criminalizable conduct, held that the omnibus clause was limited to cases in which the defendant knew of a pending IRS action. United States v. Kassouf, 144 F.3d 952 (6th Cir. 1998); United States v. Miner, 774 F.3d 336, 342-45 (6th Cir. 2014). The Sixth Circuit's

3

view is now distinctly in the minority, and the panel's opinion here signs on to the emerging consensus of error in the circuit courts.

## II

Increasingly, the Supreme Court casts a cold eye on broad residual criminal statutes (particularly omnibus clauses like the one here), and has saved such statutes by construing the statutory text to cabin them.

In United States v. Aguilar, the Court considered a similarly worded statute concerning grand juror intimidation: the residual clause imposed criminal liability for one who "corruptly . . . endeavors to influence, obstruct, or impede, the due administration of justice." 515 U.S. 593, 599-600 (1995) (interpreting 18 U.S.C. § 1503). To curb the impermissible breadth of the wording, the Court (a) implicitly interpreted "the due administration of justice" to require a court or grand jury proceeding (and thus excluded "an investigation independent of the court's or grand jury's authority"), and (b) explicitly required a "nexus" with a grand jury or judicial proceeding to support criminal liability.

Similar alarm about fair warning and overbreadth animates Arthur Andersen LLP v. United States, which recognized and generously construed a

4

knowledge requirement to limit the scope of a statute that criminalized "corruptly persuad[ing]" someone to destroy documents. 544 U.S. 696 (2005) (interpreting 18 U.S.C. § 1512). For much the same reason, the Supreme Court sharply curtailed so-called honest-services fraud in Skilling v. United States, 561 U.S. 358 (2010). Further, in Yates v. United States, the government used a provision of the Sarbanes-Oxley Act criminalizing destruction of evidence to prosecute a poaching fisherman who threw fish overboard; the plurality invoked the rule of lenity to reverse on the ground that, under the statute, a fish was not a "tangible object." 135 S. Ct. 1074, 1088 (2015) (interpreting 18 U.S.C. § 1519). And in Johnson v. United States, the Court held that the "residual clause" of the Armed Career Criminal Act was so vague that it failed to provide the constitutionally required fair notice of what conduct it actually punished. 135 S. Ct. 2551 (2015) (interpreting 18 U.S.C. § 924(e)). Most recently, in McDonnell v. United States, the Court rejected an expansive view of what qualifies as an "official act" in public corruption cases. 136 S. Ct. 2355 (2016).

**III**

The panel opinion in Marinello affords the sort of capacious, unbounded,

5

and oppressive opportunity for prosecutorial abuse that the Supreme Court has repeatedly curtailed.

The actus reus for this crime is the failure to keep sufficient books and records. The panel opinion likely took comfort in the mens rea requirement that the act or acts be done "corruptly." Any such comfort is surely an illusion, for two reasons. First, the risk of wrongful conviction, even with a mens rea requirement, is real: the line between aggressive tax avoidance and "corrupt" obstruction can be hard to discern, especially when no IRS investigation is active. Second, *alleging* a corrupt motive is no burden at all. Prosecutorial power is not just the power to convict those we are sure have guilty minds; it is also the power to destroy people. How easy it is under the panel's opinion for an overzealous or partisan prosecutor to investigate, to threaten, to force into pleading, or perhaps (with luck) to convict *anybody*.

The saving requirement that the Sixth Circuit added is that there must have been a pending IRS action of which the defendant was aware. That measure goes a good way toward setting some bounds. It construes the statute as a specialized tool for active IRS investigations, rather than a prosecutor's hammer that can be brought down upon any citizen.

6

And what is lost in confining this statute to interference with ongoing proceedings? Failure to pay taxes is already a crime, as is tax evasion. See 26 U.S.C. § 7201-7207; 18 U.S.C. § 371. Marinello himself, who is certainly culpable for his tax evasion, was in fact convicted of eight such felonies aside from the single count of violating the omnibus clause. Indiscriminate application of this omnibus clause serves only to snag citizens who cannot be caught in the fine-drawn net of specified offenses, or to pile on offenses when a real tax cheat is convicted.

The panel opinion does not consider the risk of prosecutorial abuse at all, and dismisses overbreadth and vagueness in a single paragraph--and that paragraph merely cites other decisions. 839 F.3d at 221-22. Instead, the panel opinion spends pages positing differences between the phrases "due administration of justice" and "due administration of this title," and looking to statutory context and legislative history in an attempt to distinguish the Supreme Court's interpretation of a nearly identical statute in Aguilar.

The attempt fails. Aguilar looked to the conduct specified in the rest of the statute in construing the omnibus clause of 18 U.S.C. § 1503(a), and the panel opinion seeks to distinguish the omnibus clause here (§ 7212(a)) on that basis.

7

But reading § 7212(a) in context subverts rather than supports the panel's broad

interpretation: a contextual reading demonstrates that § 7212(a) is about

impediments to the work of *particular officers and employees* of the IRS, rather than

to the work of the IRS in the abstract or in whole.  The relevant text of § 7212(a)

is as follows, with the omnibus clause italicized:

> Whoever corruptly or by force or threats of force (including any
> threatening letter or communication) endeavors to intimidate or impede
> any officer or employee of the United States acting in an official capacity
> under this title, *or in any other way corruptly or by force or threats of force
> (including any threatening letter or communication) obstructs or impedes, or
> endeavors to obstruct or impede, the due administration of this title,*  shall, upon
> conviction thereof . . .  The term "threats of force", as used in this
> subsection, means threats of bodily harm to the officer or employee of the
> United States or to a member of his family.

The Supreme Court construed the <u>Aguilar</u> clause to require a grand jury

or judicial proceeding because earlier parts of the <u>Aguilar</u> statute implicitly

require a grand jury or judicial proceeding.  By the same token, the text that

precedes the omnibus clause here, and is part of the same sentence and

subsection, presupposes an identifiable officer or employee.  That is because it

prohibits corruptly or threateningly attempting "to intimidate or impede any

officer or employee of the United States acting in an official capacity."  Statutory

cross-references to § 7212(a) in the Internal Revenue Code (which were passed as

8

part of the same legislative act as § 7212(a) itself)[1] also presuppose a particular officer or employee who has been impeded. Section 6531(6) describes it as "relating to intimidation of officers and employees of the United States," and section 7601(b) describes it as forbidding "forcible obstruction or hindrance of Treasury officers or employees in the performance of their duties." 26 U.S.C. § 6531(6); 26 U.S.C. § 7601(b).

The same subsection defines "threats of force" in terms that bear upon individual agents, and thereby compels the inference of an ongoing matter: "The term 'threats of force', as used in this subsection, means threats of bodily harm to the officer or employee of the United States or to a member of his family." 26 U.S.C. § 7212(a). Both the initial clause of § 7212(a) and the omnibus clause ban threats of force; so the omnibus clause also supposes an identifiable IRS officer or employee. Similarly, the one statutory example of obstruction--in each clause of § 7212(a)--is sending a "threatening letter or communication." Inasmuch as there are nearly 80,000 IRS officers or employees, it is scarcely possible a letter (however threatening) that is sent without a named addressee would in any way

---

[1] See Internal Revenue Code of 1954, Pub.L. 83-591.

9

"impede" the work of this army.[2]

The same point can be made about the destruction of documents. Unless an investigation is ongoing, it is impossible to point to a particular IRS employee among those 80,000 whose work has been impeded. And only when an IRS investigation is ongoing can one posit, *as the statute itself does*, a particular officer who has been impeded (such as by a taxpayer writing a threatening letter or destroying personal documents)--and that officer is the investigator on the case. Reading § 7212(a)'s omnibus clause in light of the section that precedes it thus leads us back to the requirement of an active investigation.

As to legislative history, the panel relies on its absence to distinguish this case from Aguilar. 839 F.3d at 221. That is a thin reed; in any event, there is relevant legislative history for § 7212(a), and it confirms my view.[3]

---

[2] The legislative history, discussed in footnote 3, also backs up the view that § 7212(a) is aimed at obstruction of particular IRS officers or employees.

[3] The prior version of § 7212(a) only prohibited *forcible* obstruction of IRS officers. Int. Rev. Code of 1939, ch. 34, § 3601(c)(1). When Congress re-wrote the tax code and re-drafted § 7212(a) in 1954, the Senate and House Reports only briefly explained the purpose of § 7212(a) (their explanation for the addition to the statute is in italics):

Subsection (a) of this section, relating to the intimidation or impeding of any officer or employee of the United States acting in an official capacity under this title, or by force or threat of force attempting to obstruct or impede the due

10

Finally, unlike the panel, I decline to defer to the Department of Justice's views to determine the scope of a criminal statute.  Id. at 223.

Even if the majority is correct--even if any limit to the omnibus clause is insupportable--then we should have gone in banc to determine whether such a limitless statute is constitutional.  At some point, prosecutors must encounter boundaries to discretion, so that no American prosecutor can say, "Show me the man and I'll find you the crime."

---

administration of this title is new in part.  This section provides for the punishment of threats or threatening acts against agents of the Internal Revenue Service, or any other officer or employee of the United States, or members of the families of such persons, on account of the performance by such agents or officers or employees of their official duties.  *This section will also punish the corrupt solicitation of an internal revenue employee.*

H.R.Rep. No. 1337, 83rd Cong., 2d Sess. (1954); S.Rep. No. 1622, 83rd Cong., 2d Sess. (1954) (emphasis added).  If Congress intended to dramatically expand the scope of the law in the way the panel conceives, the legislative history gives no hint of it.

11